# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39577**

————————————

## UNITED STATES
*Appellee*

**v.**

## Nicholas A. KNARR
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 June 2020

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 16 July 2018 by GCM convened at Kadena Air Base, Japan.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Tami L. Mitchell, Esquire; David P. Sheldon, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Amanda L.K. Linares, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

————————————

## PUBLISHED OPINION OF THE COURT

————————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of attempted sexual abuse of

a child and one specification of solicitation to distribute child pornography, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the dishonorable discharge, confinement, reduction in grade, and reprimand, but disapproved the adjudged forfeitures. In addition, the convening authority deferred the adjudged and mandatory forfeitures and the reduction in grade until action pursuant to Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, and waived mandatory forfeitures for the benefit of Appellant's dependent spouse and child until the earlier of six months or the expiration of Appellant's term of service pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.

Appellant raises seven issues: (1) whether the evidence is legally and factually sufficient to support his convictions; (2) whether Appellant's statements charged in the Specification of Charge I are protected by the First Amendment;[3] (3) whether the military judge erred by permitting law enforcement agents to testify about how individuals other than Appellant responded to personal advertisements; (4) whether the military judge erred in admitting evidence that Appellant received "inappropriate" images from a minor under Mil. R. Evid. 404(b); (5) whether the military judge erred in permitting a prosecution witness to testify as an expert in digital forensics; (6) whether the military judge abused his discretion by granting a continuance requested by the Government; and (7) whether Appellant's sentence to a dishonorable discharge is inappropriately severe.[4] In addition, although not raised by Appellant, we consider whether Appellant is entitled to relief for facially unreasonable post-trial delay. We have carefully considered issue (6) and find it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The military judge made minor exceptions and substitutions to both specifications which are not pertinent to the issues on appeal.

[3] U.S. CONST. amend. I.

[4] Appellant personally raises issues (5), (6), and (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

## I. BACKGROUND

Appellant was stationed and lived on Kadena Air Base (AB), Okinawa, Japan, on 8 February 2017 when he saw a personal advertisement in the "casual encounters" section of Craigslist for the Okinawa geographic region.[5] The advertisement read, "New to island. Fresh daughter looking for a date. Mu$t be serious and discrete. Tell me what you are looking for." Appellant responded, "Im looking for some discreet no strings f*cking. What about you?" Appellant attached a photo of his bare chest and one of his exposed penis. He received a response from "Ella": "oh my. im a bit young, is 14 ok with u? a lot of ppl freak out[.]"

Appellant, who was 26 years old at the time, responded by admonishing, "If you are 14 you legally cant post to craigslist." However, he continued to exchange messages with "Ella," initially through Craigslist and then through the Kik messaging application, for approximately two and a half months. He learned that "Ella" lived with her single mother on Kadena AB. In the early stages, Appellant did not make sexually-oriented comments or requests to "Ella." He asked her to delete the photos he sent, instructed her not to "say or do anything inappropriate" because he was "no law breaker" and reiterated it was "[n]ot legal for anything inappropriate so keep things pg." However, as time passed, Appellant repeatedly turned their exchanges to sexual topics. Among other sexually-charged messages, Appellant asked "Ella" whether and how she masturbated; told "Ella" that he wanted to have sexual intercourse with her, and described his fantasies about doing so; speculated about where he would ejaculate when they engaged in sex; and persistently urged her to send him naked photos of herself. Appellant and "Ella" each sent the other five non-explicit photos of themselves, but "Ella" declined to send Appellant any naked photos. Appellant never made specific plans to meet "Ella" in person.

In reality, the Craigslist advertisement had been posted by Special Agent (SA) KP, an agent of the Naval Criminal Investigative Service (NCIS) stationed on Okinawa. The messages Appellant received from "Ella" were sent at various times by SA KP; another NCIS agent, SA SB; and Corporal (Cpl) HF, a female Marine who was assigned to assist NCIS with this operation. The image used as "Ella's" Kik avatar was a photo of Cpl HF taken when she was 15 years old. The five photos "Ella" sent Appellant in the course of their correspondence were photos of Cpl HF when she was 21 years old, in civilian clothing in a mock bedroom staged for the purpose by NCIS.

---

[5] A Naval Criminal Investigative Service agent testifying for the Government described Craigslist as "an online classified ads platform."

NCIS informed the Air Force Office of Special Investigations (AFOSI) of its operation, and an AFOSI agent was able to identify Appellant by tracing his Internet Protocol address. AFOSI agents interviewed Appellant, and he wrote a statement, portions of which the Government introduced at his court-martial. Appellant stated he had "made serious mistakes" and "want[ed] help." Appellant acknowledged he had met several other underage females through dating applications with whom he "talked inappropriately about having sex" and "meeting up." He also admitted that when he was 20 or 21 years old he "dated" a 16-year-old girl who sent him "a large number of inappropriate photos." Appellant admitted "all of these things that I have done are wrong," admitted he knew "these people were too young," and apologized for his behavior. AFOSI agents seized Appellant's phone and sent it to the Defense Cyber Crime Center (DC3) for analysis. The DC3 determined, *inter alia*, that Appellant's phone had been used to email "Ella," and that the Kik messaging application had been deleted from the phone shortly before Appellant's AFOSI interview.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable

doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

In order to find Appellant guilty of an attempt in violation of Article 80, UCMJ, the military judge was required to find the following elements proven beyond a reasonable doubt: (1) that Appellant did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 4.b. The elements for sexual abuse of a child by indecent communication in violation of Article 120b, UCMJ, as charged here, required the Government to prove beyond a reasonable doubt: (1) Appellant intentionally communicated indecent language to a child under the age of 16 years; and (2) he did so with the intent to gratify his sexual desire. *See MCM*, pt. IV, ¶ 45b.b.(4)(d). "'Indecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *MCM*, pt. IV, ¶ 89.c.

Appellant's conviction for solicitation to commit an offense in violation of Article 134, UCMJ, as charged here, required the military judge to find the following elements beyond a reasonable doubt: (1) that Appellant solicited "Ella" to commit a certain offense under the code; (2) that Appellant did so with the intent that the offense actually be committed; and (3) that, under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 105.b. The elements for distribution of child pornography in violation of Article 134, UCMJ, include: (1) knowing and wrongful distribution of child pornography to another; and (2) that, under the circumstances, the conduct was prejudicial to good order and discipline in the armed forces or of a nature to bring discredit on the armed forces. *See MCM*, pt. IV, ¶ 68b.b.(3). "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1). "Sexually explicit conduct" includes the "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c.(7).

**2. Analysis**

Appellant argues the evidence is legally and factually insufficient to support his convictions. We consider each offense in turn.

### a. Attempted Sexual Abuse of a Child (Charge I)

The Government's proof of this offense was very strong. There is little room for doubt that Appellant sent the charged messages to "Ella," despite the fact that she told him—and he acknowledged—that she was only 14 years old. The Specification of Charge I quotes numerous sexually-oriented messages Appellant sent "Ella," including, as referenced above, questions about masturbation, explicit references to engaging in sexual acts together, and requests for photos of "Ella" either naked or clad only in underwear. We find such messages to a 14-year-old child qualify as "indecent," and that Appellant intended to gratify his sexual desire. Moreover, by sending the messages, Appellant committed an overt act beyond mere preparation with the specific intent to commit the offense of sexual abuse of a child, and his actions tended to bring about the commission of the offense, but for the fact that "Ella" was not a real 14-year-old girl.

On appeal, as at trial, Appellant defends on the basis that he knew law enforcement was behind the "Ella" persona all along, and he did not actually believe "Ella" was a real person. Appellant cites several potential weak points in the NCIS operation as it related to him. For example, the advertisement Appellant initially responded to was intended to portray a "bad dad" scenario, where a purported parent was offering his minor daughter for sexual purposes. When Appellant's response suggested he misinterpreted the advertisement as being from the "daughter" herself, the agent modified the scenario, which created incongruity between the initial posting and the subsequent communications. In addition, Government witnesses conceded that having three different individuals operate the "Ella" persona was not ideal, but the agents compensated by reviewing the messages the other agents exchanged with Appellant, and there are no obvious gaps in the continuity of the messages. The operation relied on photos of Cpl HF, a 21-year-old woman, albeit a woman apparently selected for her youthful appearance. Furthermore, as the Defense pointed out, the NCIS posted multiple Craigslist advertisements for the Okinawa region at the same time, and Appellant responded to others in addition to "Ella," including—briefly—a persona known as "Alexis" which also used the same avatar photo of Cpl HF used for "Ella."

However, Appellant's messages to "Ella" never challenged her identity or indicated he believed law enforcement agents were behind the persona. Instead, his messages consistently portray someone who found messaging with "Ella" sexually stimulating and hoped to receive naked photos of her. Appellant's attempts to find nuances in his messages indicating his messages were some sort of game with law enforcement are unconvincing, as are his claims

during his AFOSI interview that he did not believe "Ella" was real. It is possible that, at some late stage before he was summoned to AFOSI, Appellant eventually suspected or believed "Ella" was fictitious—in fact, trial counsel suggested as much during the Government's closing argument. However, we are satisfied the messages charged in the Specification of Charge I were intended for someone Appellant believed to be a 14-year-old girl.

### b. Solicitation to Distribute Child Pornography (Charge II)

The Government's proof that Appellant solicited "Ella" to distribute child pornography was also strong. Appellant persistently requested and encouraged "Ella" to send him naked photographs of herself. In this context, he told her that he wanted to see "everything," including her "[c]hest booty and the rest," that other people had sent him a lot of "full nude[s]," and most telling, that he wanted to see her "p***y" and her "c**ch," which left little doubt that Appellant solicited "Ella" to send him a lascivious display of her genitals. Such a distribution would have been knowing and wrongful, and we further find Appellant's conduct was of a nature to bring discredit upon the armed forces.

Of course, if Appellant had truly believed that law enforcement agents were behind "Ella," then he presumably never expected to receive child pornography from them. However, we find this argument unconvincing for the reasons stated above. Appellant correctly observes that "nude" photos of a child are not necessarily child pornography; but as we have explained, Appellant's requests were more specific and solicited a lascivious display of "Ella's" genitals.

Appellant raises another, more technical argument regarding the charged solicitation. He contends that because "Ella" was not a real child and could not send pictures of herself, it was impossible for Appellant to complete the crime of solicitation.[6] Therefore, he argues, "at best, Appellant had committed the crime of attempted solicitation," rather than solicitation.[7]

---

[6] Although not asserted by Appellant, we note that the offense might also appear facially impossible because "Ella," as a 14-year-old civilian, was not subject to UCMJ jurisdiction and could not "commit a certain offense under the code." *MCM*, pt. IV, ¶ 105.b.(1); *see* Article 2, UCMJ, 10 U.S.C. § 802 (identifying categories of persons subject to the UCMJ). However, it appears to be settled law that "the solicitation of another person to commit an offense which, if committed by one subject to the UCMJ, would be punishable under the UCMJ, is an offense cognizable under Article 134." *United States v. Robertson*, 17 M.J. 846, 851 (N.M.C.M.R. 1984); *see United States v. Hanner*, No. ACM S28497, 1993 CMR LEXIS 61, at *6 (A.F.C.M.R. 28 Jan. 1993) (unpub. op.) ("The person solicited can be a civilian.") (citations omitted).

[7] At trial, the Defense made the same argument in support of a motion for a finding of not guilty as to the Specification of Charge II, pursuant to R.C.M. 917. The military judge denied the motion.

We are not persuaded. The "general rule is that an accused should be treated in accordance with the facts as he or she supposed them to be." *United States v. Riddle*, 44 M.J. 282, 286 (C.A.A.F. 1996) (citations omitted). It is unequivocally the rule that impossibility is no defense to the crime of attempt in violation of Article 80, UCMJ. *See id.* (citations omitted).

The parties have not identified, and we are not aware, of a case in which this court or our superior court addressed the principle of impossibility in the context of solicitation charged under Article 134, UCMJ. However, our sister court addressed this very point in *United States v. Dellacamera*, No. 201600230, 2017 CCA LEXIS 209, at *4–9 (N.M. Ct. Crim. App. 30 Mar. 2017) (unpub. op.). As in Appellant's case, Staff Sergeant Dellacamera was charged with soliciting the production and distribution of child pornography from a fictitious persona created by the NCIS that he believed to be a 14-year-old girl. *Id.* at *1–4. On appeal, he argued the military judge abused his discretion in accepting the guilty plea to the solicitation offenses because it was a "legal impossibility" for the solicitation to have resulted in the production of child pornography. *Id.* at *4. After reviewing related precedent from the United States Supreme Court, the United States Court of Appeals for the Armed Forces (CAAF), the Michigan Supreme Court, and its own prior decisions, the Navy-Marine Corps Court of Criminal Appeals (NMCCA) concluded "the appellant's mistaken notion regarding the identity of the party he solicited affords him no defense in military jurisprudence." *Id.* at *9; *see United States v. Williams*, 553 U.S. 285, 300 (2008) ("As with other inchoate crimes—attempt and conspiracy, for example—impossibility of completing the crime [of pandering child pornography in violation of 18 U.S.C. § 2252A] because the facts were not as the defendant believed is not a defense."); *United States v. Roeseler*, 55 M.J. 286, 291 (C.A.A.F. 2001) (citing *United States v. Thomas*, 13 C.M.A. 278, 286–87 (C.M.A. 1962)) ("[I]mpossibility of the crime attempted or conspired is not a defense to a charge of attempt or conspiracy under military law."); *People v. Thousand*, 631 N.W.2d 694, 703 (Mich. 2001) (noting the court has never recognized impossibility as a defense to attempt or solicitation, and is "unable to locate any authority . . . that 'impossibility' is a recognized defense to a charge of solicitation in other jurisdictions").

Appellant notes that *Dellacamera* involved a guilty plea and therefore a different standard of review on appeal. *See Dellacamera*, unpub. op. at *1–4. However, the substantive principles regarding the legal sufficiency of the conviction are not materially different. We agree with our NMCCA counterparts and hold that, provided the elements of the offense are otherwise satisfied, the impossibility of the crime solicited is not a defense to solicitation in violation of Article 134, UCMJ.

### c. Conclusion as to Legal and Factual Sufficiency

Drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction of Charges I and II and their Specifications beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Additionally, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

## B. First Amendment

### 1. Additional Background

On 6 April 2017, almost two months after Appellant first contacted "Ella," he texted her the following lyrics from a song by the recording artist Ludacris:

> I wanna li-li-li-li-li-lick your [sic] from your head to yo toes, I wanna move from the bed down to the down to the floor and i wanna ah ah make it feel so good you dont wanna leave. So tell me what is your fa-fa-fantasy?

By this point in time, Appellant had already sent numerous sexually-charged messages to "Ella," including questions about masturbation, descriptions of his thoughts and fantasies about engaging in sexual acts with her, and repeated requests that she send him naked pictures of herself. "Ella" responded, "Is that what u wanna do to me?" Appellant responded: "Word. You down?" Shortly thereafter, Appellant texted "Ella": "I wanna see you naked," "Be bad for me," "Take naughty pictures," and "Do it for me."

The lyrics quoted above were among the charged indecent language quoted verbatim in the Specification of Charge I. At the Defense's request, the military judge took judicial notice that these lyrics were from a song by Ludacris. The military judge found Appellant guilty of the entire Specification, including the song lyrics.

### 2. Law

"The constitutionality of an act of Congress is a question of law that we review de novo." *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012) (citing *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005)). We also review issues of legal sufficiency de novo. *United States v. Meakin*, 78 M.J. 396, 400 (C.A.A.F. 2019) (citing *United States v. Kearns*, 73 M.J. 177, 180 (C.A.A.F. 2014)).

"'Indecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *MCM*, pt. IV, ¶ 89.c. The indecency of a communication depends on "the context in which it is made." *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (citation

omitted); *see also United States v. Hullett*, 40 M.J. 189, 191 (C.M.A. 1994) (noting that whether language is indecent depends on multiple factors including, *inter alia*, fluctuating community standards, personal relationships, motive, intent, and probable effect) (citations omitted).

The CAAF "has long held that 'indecent' is synonymous with obscene." *Meakin*, 78 M.J. at 401 (citing *United States v. Moore*, 38 M.J. 490, 492 (C.M.A. 1994)). "It is well-settled law that obscenity is not speech protected by the First Amendment, regardless of the military or civilian status of the 'speaker.'" *Id.* (citing *United States v. Williams*, 553 U.S. 285, 288 (2008); *United States v. Wilcox*, 66 M.J. 442, 447 (C.A.A.F. 2008)).

### 3. Analysis

Appellant notes the Supreme Court has held that, in order to be proscribed by state law as obscene material outside the protection of the First Amendment, a work must "appeal to the prurient interest in sex, [ ] portray sexual conduct in a patently offensive way, and . . . taken as a whole, [ ] not have serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973). Appellant reasons that the lyrics to a commercially-released song by a well-known recording artist that achieved significant popularity do not lack serious artistic value. Therefore, he concludes, these lyrics were protected by the First Amendment, and his recitation of them to "Ella" was not obscene. We disagree.

As the CAAF has recognized, the context of a communication is critical to any determination of indecency. *See Green*, 68 M.J. at 270. Words that are innocent or appropriate in one context may take on an indecent meaning in another. In the instant case, Appellant did not share these lyrics in the context of a discussion about music or recording artists. Appellant shared the lyrics as a continuation of prior communications expressing his sexual desires for someone who he believed to be a 14-year-old child, and from whom he sought naked photographs of herself. Under these circumstances, Appellant's use of the lyrics, as distinct from their original creation, had no serious artistic value; rather, it was a continued manifestation of Appellant's patently offensive sexual interest and enticement of a perceived child.

Appellant cites additional Supreme Court precedent for the proposition that the CAAF's holding in *Moore*, 38 M.J. at 492, that "indecent" is synonymous with "obscene" is no longer good law. *See Reno v. ACLU,* 521 U.S. 844, 874 (1997) ("'[S]exual expression which is indecent but not obscene is protected by the First Amendment.'") (quoting *Sable Communications of Cal. v. FCC*, 492 U.S. 115, 126 (1989)). However, the CAAF recently reaffirmed this very point in *Meakin*, 78 M.J. at 401 (citing *Moore*, 38 M.J. at 492)). We are not at liberty to contradict our superior court on a point of law, nor would we be inclined to

do so had we the power. In context, Appellant's communication of the lyrics to "Ella" was both indecent and obscene, and this assignment of error is without merit.

## C. Testimony about Other People

### 1. Additional Background

On direct examination, SA KP testified he received "numerous" responses to the Craigslist advertisement in addition to Appellant's response. Senior trial counsel asked SA KP to describe the "nature" of those responses. SA KP replied:

> It varied. Some people understood what the ad meant. Some people picked up -- the dollar sign for instance, is typically used when we're talking about prostitution or sex for money in Craigslist; some people picked up on that. Other people, you get a lot of responses where they're just trying to clarify what exactly you're saying. People that are interested, they may be too scared, all the way to people, you know telling you you're sick and disgusting and they're going to report you, which is expected. And then, also responses where people misread the ad and thought I was actually a female posting.

Shortly thereafter, senior trial counsel asked SA KP to compare how Appellant's response to the advertisement compared to a "typical response." SA KP responded that although he did not know if there was a "typical response," "usually you've got people who are asking clarifying questions, they're kind of feeling around to see exactly what's going on or what the ad relates to." By comparison, SA KP testified, Appellant was "very direct on the initial response and included photographs right away."

Later, senior trial counsel asked if SA KP's response to Appellant—as "Ella"—stating, "oh my. im a bit young, is 14 ok with u? a lot of ppl freak out," was a "typical reply." SA KP explained:

> Very typical. So, and you see I am putting the age out there. The reason why I'm doing that is because posting these ads we may literally have 100 responses to these ads, so you have to sort through them and figure out what's worth your time investment, and who's worthy of continuing to chat. The majority of people that respond, if I give them some type of comment about my age right away, I'm going to knock off 98 percent probably of our responders because you're going to get the typical response you know "14 way too young, not what I was looking for," and they go away and they stop communications. So that -- that being the first response, especially when I'm receiving such a very direct

> response and photographs was just my way of saying "hey, this is who I am are you serious; are you going to continue talking, or are you going to fall off."

Trial defense counsel did not object to any of this testimony.

**2. Law**

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020) (citing *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019)) (additional citation omitted). However, the failure to make a timely objection to evidence at trial forfeits that error in the absence of plain error. *See* Mil. R. Evid. 103(a)(1)(A); *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted). To prevail under a plain error analysis, an appellant must show: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted). The burden of proof under a plain error review is on the appellant. *See United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted).

Mil. R. Evid. 401 establishes the standard for determining whether evidence is relevant, stating "[e]vidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Mil. R. Evid. 402 generally provides that "relevant evidence" is admissible unless one of four exceptions enumerated in the Rule applies. Mil. R. Evid. 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

**3. Analysis**

Appellant contends the military judge erred in allowing SA KP to testify about "typical responses" to the Craigslist advertisement. He compares this situation to that in *United States v. Hintz*, No. ACM 39136, 2018 CCA LEXIS 186, at *6–14 (A.F. Ct. Crim. App. 13 Apr. 2018) (unpub. op.), *rev. denied*, 78 M.J. 56 (C.A.A.F. 2018). *Hintz* involved a similar situation in which the appellant responded to a Craigslist advertisement posted by "Lisa," a fictitious 13-year-old persona created by an AFOSI agent. *Id.* at *3–4. Over defense objection, the military judge permitted trial counsel to elicit testimony regarding how individuals "typically" responded upon learning "Lisa" was 13 years old. *Id.* at *7–9. This court found the military judge abused her discretion in allowing such testimony, in combination with additional testimony from the agent "as to how Appellant behaved like a child predator, that Appellant had the intent to have sex with a 13-year-old child, and that Appellant did not act like

an 'innocent' person would under the circumstances." *Id.* at *13. However, we found the error harmless. *Id.* at *15–18.

We are not persuaded the military judge's failure to exclude *sua sponte* SA KP's testimony regarding "typical" responses to the Craigslist advertisement resulted in prejudicial error in Appellant's case for several reasons.

First, the error in *Hintz* was far more egregious than that Appellant alleges here. In *Hintz*, the agent was permitted not only to contrast the appellant's response with "typical" responses to learning "Lisa's" age; he essentially testified before the court members that, based on his training regarding "child predators," the appellant was "different than an otherwise innocent person" and wanted to have sex with a 13-year-old child. *Id.* at *10–11. The Government neither solicited nor elicited any such testimony in Appellant's case.

Second, unlike *Hintz*, Appellant's trial defense counsel did not object to SA KP's testimony. Because he forfeited the objection, the question on appeal is whether the military judge "plainly" or "obviously" erred by failing to exclude *sua sponte* testimony the Defense evidently found unobjectionable.

We conclude the military judge did not plainly err. We acknowledge the testimony regarding what other individuals did may have been excludable. On appeal, the Government contends SA KP's testimony "was entirely relevant to show the steps of the investigation that lead to identifying Appellant and figuring out his *mens rea.*" We find this purported relevance and materiality to be marginal; SA KP could easily have explained the steps he took with respect to Appellant without reference to what others did. However, if the relevance was low, so was the risk of unfair prejudice. There is nothing surprising in SA KP's testimony regarding the wide range of responses to the initial advertisement. Unlike *Hintz*, the Government did not try to tie testimony comparing Appellant's response to the responses of others in order to suggest Appellant was behaving like a "child predator." Indeed, Appellant's *initial* response to the advertisement, while very direct and forward, suggested he misinterpreted the advertisement and did not understand it to be an offer of child prostitution, or even to involve a child at all.

Furthermore, Appellant was tried by a military judge alone. As the CAAF has explained:

> When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence. . . . As a result, "plain error before a military judge sitting alone is rare indeed."

*United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) (citations omitted). We find no indication the military judge used SA KP's testimony inappropriately. Accordingly, Appellant has not carried his burden to demonstrate a plain or obvious error, or that the alleged error materially prejudiced his substantial rights. *See Sewell*, 76 M.J. at 18 (citation omitted).

## D. Mil. R. Evid. 404(b)

### 1. Additional Background

In findings, the Defense offered early portions of Appellant's video-recorded AFOSI interview in which Appellant repeatedly asserted he believed "Ella" was a fictitious persona created by law enforcement agents and indicated he did not knowingly engage in sexual communications with underage females. In response, the Government sought to introduce additional portions of the interview and portions of Appellant's written statement pursuant to Mil. R. Evid. 106. Among other sections, the Government sought to introduce information from Appellant's written statement that when he was 20 or 21 years old, he dated a 16-year-old girl, T, who sent him "a large number of inappropriate photos" during their relationship. The Government also sought to include related portions of the interview in which Appellant referred to T by name as someone he dated when she was 16 or 17 years old, and later acknowledged she had sent him naked photos of herself.

Senior defense counsel objected to the references to T, including to Appellant having received a large number of inappropriate photos from her. He contended that the reference to "inappropriate photos" did not necessarily connote child pornography, and that the statements were "too vague" and "just doesn't get to the [relevant] issues." In response, senior trial counsel explained:

> [W]e're not entering this as propensity evidence. . . . We have specific purposes, the main one of which is to impeach [Appellant's] OSI statements to show that he has internal inconsistencies. At the beginning, he's saying one thing very clearly, and then by the end he's admitting that that was a complete falsehood. So, to impeach him, as well as again, to show his consciousness of guilt. And so, these are appropriate bases that rebut this evidence that defense has presented . . . .

The military judge overruled the objection. He found the evidence in question was relevant to demonstrate Appellant's consciousness of guilt and to impeach Appellant's other statements offered by the Defense. The military judge further found the probative value was not substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403, although he did not recite his reasoning in detail.

### 2. Law

"The standard of review for a military judge's decision to admit evidence is abuse of discretion." *United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017) (citing *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted).

Mil. R. Evid. 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving intent, knowledge, or absence of mistake. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) does the evidence "reasonably support a finding" that the accused committed the prior crime, wrong, or act; (2) what "fact of . . . consequence is made more or less probable" by the proffered evidence; and (3) is the "probative value . . . substantially outweighed by the danger of unfair prejudice?" *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (internal quotation marks and citations omitted).

Mil. R. Evid. 403 provides that evidence that is relevant and otherwise admissible may be excluded if its probative value is substantially outweighed by the danger of, *inter alia*, unfair prejudice or confusion of the issues.

**3. Analysis**

Appellant asserts the military judge abused his discretion in admitting Appellant's statement that he received a large number of inappropriate photographs from T. As senior defense counsel noted at trial, "inappropriate" photographs do not necessarily indicate child pornography. Appellant further contends that in order to be an offense under the UCMJ, the conduct would need to be prejudicial to good order and discipline or service-discrediting; he argues his conduct with T was not necessarily either. *See MCM*, pt. IV, ¶ 68b.b.(1)(b).

A basic flaw in Appellant's argument is that the Government did not offer these statements as evidence of a similar crime in a sexual offense or child molestation prosecution in order to demonstrate propensity pursuant to Mil.

R. Evid. 413 or 414. In fact, senior trial counsel specifically disavowed such a purpose. Therefore, the relevance of the evidence did not hinge specifically on it being evidence of a sexual offense. Instead, the Government offered the evidence on two other theories of relevance—that these contradictory statements impeached Appellant's earlier statements offered by the Defense, and that Appellant's false statements indicate consciousness of guilt. The military judge understood and admitted the evidence on these bases, and we conclude he did not abuse his discretion in doing so.

The Defense offered a portion of Appellant's AFOSI interview in support of its theory that Appellant never believed "Ella" was an actual 14-year-old child. In the portion of the interview the Defense offered, Appellant indicated he did not knowingly have sexual communications with children. He claimed his communications with "Ella" were part of a game he was playing, and had played in the past, with what he believed to be fictitious personas created by law enforcement agents. However, later portions of the interview offered by the Government, including the reference to receiving inappropriate photos from T, which he orally admitted included naked photos, contradicted his earlier statements—regardless of whether they constituted admissions to receiving child pornography in violation of the UCMJ. Therefore, they were relevant as information that should be considered with the rest of the interview pursuant to Mil. R. Evid. 106 for its impact on Appellant's reliability generally and the reliability of Appellant's earlier statements to AFOSI that the Defense sought to use in support of its case. These contradictory admissions were also relevant for another non-propensity purpose under Mil. R. Evid. 404(b)—to demonstrate consciousness of guilt. *See United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (noting uncharged misconduct may be admissible under Mil. R. Evid. 404(b) as evidence of consciousness of guilt) (quoting *United States v. Cook*, 48 M.J. 64, 66 (C.A.A.F. 1998)).

We further conclude the military judge properly found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Although we afford the military judge less deference because he did not articulate his reasoning in this regard, *see United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000), we nevertheless find his conclusion reasonable—particularly so given that this was a trial by military judge alone, minimizing the danger of unfair prejudice. *See Erickson*, 65 M.J. at 225 (citation omitted) ("Military judges are presumed to know the law and to follow it absent clear evidence to the contrary.").

### E. Expert Testimony

#### 1. Additional Background

The Government called Ms. KR in findings. Ms. KR testified that she worked as a computer forensic examiner at the DC3, where she had been employed for seven years, five of which were spent conducting forensic examinations. Ms. KR explained she was required to demonstrate her competency by passing an annual practical exam, and she had taken 15 training classes totaling approximately 600 hours. Ms. KR was trained to use five different programs to perform analyses on electronic media. She held seven professional certifications and had testified twice previously as an expert in "digital forensics." She held bachelor's degrees in psychobiology and forensic science, and a master's degree in biomedical forensics. After eliciting this testimony and having Ms. KR's curriculum vitae admitted as a prosecution exhibit, trial counsel requested the military judge recognize Ms. KR as an expert witness in digital forensics.

Senior defense counsel objected. With the military judge's permission, he questioned Ms. KR about her qualifications. Senior defense counsel clarified that only two of Ms. KR's certifications related to analysis rather than extraction of data, and that for the most part her training was not specific to mobile devices, although the forensic practices she was trained in might apply to mobile devices as well other devices. Senior defense counsel argued to the military judge that although Ms. KR might testify as a fact witness as the individual who extracted data from Appellant's phone, she was not qualified to testify as "an expert in analyzing mobile devices." The military judge overruled the objection and recognized Ms. KR as an expert in digital forensics "based on her knowledge, skill, experience, training, and education," acknowledging the Defense was "free to, in cross-examination, point out all those other issues."

### 2. Law

We review a military judge's decision regarding the qualifications of an expert witness for an abuse of discretion. *United States v. Allison*, 63 M.J. 365, 369 (C.A.A.F. 2006) (citation omitted). "A witness may testify as an 'expert' on a particular subject matter only if the military judge determines that the witness is qualified based on his or her 'knowledge, skill, experience, training, or education' regarding that subject." *Id.* (citing Mil. R. Evid. 702). A qualified expert "may testify in the form of an opinion or otherwise" if her

> specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; [ ] the testimony is based on sufficient facts or data; [ ] the testimony is the product of reliable principles and methods; and [ ] the expert has reliably applied the principles and methods to the facts of the case.

Mil. R. Evid. 702.

The CAAF has identified six factors for courts to analyze to determine whether a proponent of expert testimony has met the Mil. R. Evid. 702 criteria:

> (1) the qualifications of the expert; (2) the subject matter of the expert testimony; (3) the basis for the expert testimony; (4) the legal relevance of the evidence; (5) the reliability of the evidence; and (6) that the probative value of the expert's testimony outweighs the other considerations outlined in [Mil. R. Evid.] 403.

*United States v. Billings*, 61 M.J. 163, 166 (C.A.A.F. 2005) (citing *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993)). Although *Houser* predates the leading Supreme Court decisions in this area, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), *Houser* is consistent with these decisions and continues to guide the admission of expert testimony in courts-martial. *Billings*, 61 M.J. at 166 (citations omitted).

### 3. Analysis

Appellant contends the military judge abused his discretion by permitting Ms. KR to testify as an expert in digital forensics. He argues she had no formal education in digital forensics, and her training and certification did not relate to analysis of mobile devices, which was the type of media at issue in this case. He also argues her testimony "relate[d] only to her work in digital forensics, and not in analyzing mobile devices."

We find the military judge acted well within his discretion in permitting Ms. KR's expert testimony. Ms. KR's years of training and experience as a computer forensic examiner provided her an ample background as an expert in digital forensics for purposes of Appellant's court-martial. To the extent her training and certifications were not specific to mobile devices but involved more generally-applicable forensic practices, that was a matter for the Defense to potentially explore on cross-examination, as the military judge recognized. As for relevance, Appellant fails to explain why qualification as an expert in "digital forensics" would not encompass analysis of mobile devices as well as other devices.

### F. Sentence Appropriateness

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence ap-

propriateness by considering the particular appellant, the nature and serious-ness of the offense[s], the appellant's record of service, and all matters con-tained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant contends his dishonorable discharge is an inappropriately severe punishment. He cites two factors: that he never attempted to meet with "Ella," and that he stopped communicating with "Ella" on his own—before he was con-tacted directly by investigators—because he became a father. Appellant avers these factors warrant modifying his dishonorable discharge to a bad-conduct discharge.

We do not conclude the dishonorable discharge is inappropriately severe as a matter of law. Over approximately two and a half months, Appellant repeat-edly communicated indecent sexual language to a person he believed to be a 14-year-old child, despite acknowledging from the outset that "Ella" was too young and that doing so would be illegal. He also repeatedly and persistently attempted to persuade her to send him naked photographs of herself that would display "everything." The harm caused by Appellant's actions was miti-gated by the fact that "Ella" was not real, but his intent was clear. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find his sentence—including the dishonorable dis-charge—is not inappropriately severe. *See Sauk*, 74 M.J. at 606.

## G. Post-Trial Delay

Although not raised as an assignment of error, we note the convening au-thority took action on 5 November 2018, but Appellant's case was not docketed with this court until 6 December 2018, 31 days later. This period exceeded the 30-day threshold for a presumptively unreasonable post-trial delay the CAAF established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Ac-cordingly, we have considered the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate re-view has been violated. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

Where, as here, an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice

system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering all the circumstances together, including that the convening authority took action only 112 days after Appellant was sentenced, well within the 120-day *Moreno* standard; the geographic distances involved in transmitting the record of trial from Japan to this court; and that the applicable *Moreno* standard was exceeded by only one day, we are convinced the delay was not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court